UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ALEX ORTIZ,

                                        Plaintiff,

          - against -

PRISCILLA LEDBETTER, MELINDA VICK,
LEROY FIELDS, LAURIE CAMPBELL, DAMON
GLOVER, EBONY BLACKE,

                                        Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 19-CV-2493 (CS)

<u>Appearances</u>:

Alex Ortiz
New York, New York
*Pro Se Plaintiff*

Jonathan J. Wilson
Assistant Attorney General
Office of the New York State Attorney General
New York, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

          Before the Court is the motion to dismiss of Defendants Priscilla Ledbetter, Melinda

Vick, Leroy Fields, Laurie Campbell, Damon Glover, and Ebony Blacke (collectively,

"Defendants" or the "named Defendants").  (Doc. 38.)[1]  For the following reasons, Defendants'

motion is GRANTED.

---

[1] Plaintiff refers to Vick, Campbell, Glover, and Blacke as "M. Vick," "Laura Campbell, "Mr. Glover," and "Ms. Blacke."  (*See* Doc. 37 ("AC") at 1.)  I adopt Defendants' spellings. (*See* Doc. 39 ("Ds' Mem.") at 1.)

I.     **BACKGROUND**

I accept as true the facts, but not the conclusions, set forth in Plaintiff's Amended Complaint.

A.     **Facts**

On April 2, 2015, *pro se* Plaintiff Alex Ortiz was convicted of two drug charges in New York state court and thereafter was sentenced principally to concurrent terms of six years' imprisonment and three years' imprisonment.  (AC ¶¶ 40-41.)  In November 2016, Plaintiff began participating in the New York State Department of Corrections and Community Supervision ("DOCCS") Temporary Release Program (the "Program") at Lincoln Correctional Facility ("Lincoln"), which enabled him to work and spend overnights with his family.  (*Id.* ¶¶ 43-45.)  On March 31, 2017, Plaintiff left Lincoln on a furlough but failed to report back as required on April 2.  (*Id.* ¶¶ 46-48.)  On April 7, DOCCS agents apprehended him at work, and he was transported to Sing Sing Correctional Facility.  (*Id.* ¶¶ 49-50.)  On April 13, Plaintiff was issued a misbehavior report and charged with violations of prison rules 108.15 and 108.14, which prohibit "abscondence" and temporary release violations.  (*Id.* ¶ 51.)  At a disciplinary hearing on April 19, he pleaded "guilty with an explanation," was referred to alcohol and substance abuse treatment, and received as a penalty thirty days of keeplock and thirty days of loss of privileges.  (*Id.* ¶¶ 53-54.)  Thereafter, his keeplock sentence was modified to twenty-nine days.  (*Id.* ¶ 56.)

On April 20, Plaintiff was transferred to Fishkill Correctional Facility, and the next day he was referred to the Temporary Release Committee ("TRC") for review of his participation in the Program.  (*Id.* ¶¶ 55, 57-58.)  On May 2, a TRC hearing commenced before Defendants Campbell, Glover, and Black (the "TRC Defendants") and was recorded.  (*Id.* ¶¶ 59-61.)

Plaintiff admitted to violating the rules and asked to present two witnesses: Offender Rehabilitation Coordinator Joey Jimenez and Lincoln Correctional Facility Superintendent Ronald Brerenton. (*Id.* ¶¶ 62, 66-67, 76-77.) Plaintiff believed that Jimenez, who had supervised Plaintiff in the Program, would have been a positive character witness and testified to Plaintiff's fitness to participate in the Program, (*id.* ¶¶ 68-70, 72), and that Brerenton would have supported Plaintiff's candidacy for the Program, (*id.* ¶ 79). Defendant Campbell said that the TRC hearing was not a disciplinary hearing but rather a review of Plaintiff's participation in work release, so "one person's opinion . . . has absolutely nothing to do" with that determination. (*Id.* ¶¶ 83-84.) She asked, given that Plaintiff had admitted to violating the rules of the program, "[H]ow are all the witnesses in the world going to change that?" (*Id.* ¶ 94.) She also said, "[O]nce you abscond from temporary release, it's a done deal. We can't take that chance again." (*Id.* ¶ 96.) She told Plaintiff that he did not have the right to call witnesses or present evidence, but told him that his witnesses could write letters. (*Id.* ¶¶ 86-87, 93.) The TRC sent the hearing tape and its recommendation that Plaintiff be removed from the Program to Defendant Fields, Superintendent of Fishkill Correctional Facility, who concurred and removed Plaintiff from the Program on May 9, (*id.* ¶¶ 14, 103, 106, 112).

On May 10, Plaintiff sent an Administrative Appeal to Defendant Ledbetter, DOCCS Director of Temporary Release, (*id.* ¶ 6), requesting a new hearing or reinstatement to the Program. (*Id.* ¶¶ 115, 121.) On August 14, Plaintiff wrote to Defendant Ledbetter requesting an update on his appeal, and he wrote to his counselor requesting the same. (*Id.* ¶¶ 128, 132.) On August 16, Plaintiff learned from his counselor that his revocation from the Program was affirmed as of June 22, and received a copy of a decision by Defendant Vick, a Temporary Release Reviewer, that stated:

> The Fishkill Correctional Facility TRC and the Superintendent concurred with your removal for Tier 3 conviction for temporary release violation and abscondence. Such behavior indicates an inability to conform with the temporary release contract. Removal is warranted.  In response to your appeal, it is noted that you admit to absconding and that your request for an [Offense Release Coordinator to testify] was not as a witness to [the] abscond[ing] incident.

(*Id.* ¶¶ 139-140.)

### B.  **Procedural History**

Plaintiff's Complaint, dated March 20, 2019, named DOCCS Commissioner Anthony Annucci, Ledbetter, Vick, Fields, Campbell, Glover, and Blacke as defendants in their official and individual capacities, and brought claims under 42 U.S.C. § 1983 for denial of procedural and substantive due process; failure to intervene; negligent supervision, hiring, monitoring, training, and retention; conspiracy; and intentional and negligent infliction of emotional distress, arising out of the TRC hearing and related appeal.  (Doc. 2.)  On July 23, Defendants filed a letter requesting a pre-motion conference and stating their intention to move to dismiss for failure to state a claim.  (Doc. 26.)  At the pre-motion conference on August 20, the Court granted Plaintiff leave to amend his Complaint, (Minute Entry dated Aug. 20, 2019), which he did on October 18, removing Annucci, naming John and Jane Doe as defendants (in addition to Ledbetter, Vick, Fields, Campbell, Glover, and Blacke), and bringing the same claims as in the Complaint, (AC).  I also set a schedule for Defendants to move to dismiss or answer.  (Minute Entry dated Aug. 20, 2019.)

On November 20, Defendants moved to dismiss the Amended Complaint.  (Doc. 38.) Plaintiff requested an extension of time to oppose, (Doc. 42), which I granted, (Doc. 41). Plaintiff opposed on January 21, 2020, (Doc. 43 ("P's Opp.")), and Defendants replied on February 6, (Doc. 44 ("Ds' Reply")).

## II.   <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

Complaints by *pro se* plaintiffs shall be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (internal quotation marks and emphasis omitted),[2] and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (internal quotation marks omitted).  Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations that [the plaintiff] has not pled."  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## III.   DISCUSSION

Plaintiff alleges that the TRC hearing following the misbehavior report, as well as the appeal of the TRC's determination, involved violation of his due process rights; failure to intervene; a conspiracy; and intentional and negligent infliction of emotional distress.  He also alleges that the supervisor Defendants should be liable for the violations of their subordinates. Defendants argue that Plaintiff fails to state a claim as to each.  For the reasons stated below, I agree with Defendants.  And even if Plaintiff had stated a claim, Defendants would be entitled to qualified immunity.

### A.   Procedural Due Process

Plaintiff fashions his first four causes of action as procedural due process claims.[3]  The first and second are against all named Defendants – Ledbetter, Fields, Campbell, Blacke, Glover, and Vick – for "violat[ing] Plaintiff's constitutional rights to a fair hearing and a meaningful

_____

[2] The Court will send Plaintiff copies of all unreported cases cited in this Opinion and Order.

[3] I construe Plaintiff's procedural due process claims as arising under 42 U.S.C. § 1983.

opportunity to [be] heard," (AC ¶ 175), and "specifically [for] denying Plaintiff's rights to call witnesses, present evidence [and] mitigating information and a fair opportunity to argue against revocation," (*id.* ¶ 177).  Plaintiff's third cause of action is against the TRC Defendants – Campbell, Blacke, and Glover – for violating his right "to have a neutral and detached hearing body, as well as impartial hearing officers," (*id.* ¶ 181), and the fourth is against Ledbetter, Fields, and Vick for failure to take "corrective action," (*id.* ¶ 183).

To state a claim for a violation of procedural due process, a plaintiff must plead "that the state has created a protected liberty interest and that the process due was denied."  *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998).  Incarcerated people on work release have a liberty interest in continuing participation in a temporary release program.  *Anderson v. Recore*, 446 F.3d 324, 328 (2d Cir. 2006); *Friedl v. City of N.Y.*, 210 F.3d 79, 84 (2d Cir. 2000).  That interest "requires a pre-deprivation hearing that includes protections similar to those set forth in *Morrissey* [*v. Brewer*, 408 U.S. 471 (1972) (relating to parole revocation)]," which include

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Anderson*, 446 F.3d at 329 (quoting *Morrissey*, 408 U.S. at 489).  The *Anderson* court did not reach "the question of whether any particular procedure may be sufficient for due process purposes," *id.* at 333 n.3, but noted that "written argument may suffice in some circumstances," *id.* at 332 (discussing *FCC v. WJR, The Goodwill Station, Inc.*, 337 U.S. 265, 276 (1949)).

"[T]he minimum requirements of due process are met only if there was some evidence from

which the conclusion of the administrative tribunal could be deduced." *Friedl*, 210 F.3d at 85 (internal quotation marks omitted).

In other related contexts, such as prison disciplinary hearings, the right to call witnesses is "not absolute." *Barnes v. Henderson*, 628 F. Supp. 2d 407, 411 (W.D.N.Y. 2009). "[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). But a prisoner's request to call a witness may be denied on the grounds of irrelevance, redundancy or lack of necessity. *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014).

As with any other § 1983 claim, the plaintiff must also plausibly allege the defendant's personal involvement in the violation. *Brooks v. Rock*, No. 11-CV-1171, 2014 WL 1292232, at *19 (N.D.N.Y. Mar. 28, 2014); *see Delee v. Hannigan*, 729 F. App'x 25, 31 (2d Cir. 2018) (summary order).

### 1.    All Named Defendants

Plaintiff alleges that the named Defendants violated his due process rights by denying him the right to call witnesses, present mitigating information, and argue against the revocation of his temporary release. Defendants do not dispute that Plaintiff has a liberty interest in continued participation in the Program, (Ds' Mem. at 7), but they argue that the TRC hearing satisfied due process, (*id.* at 8-11).

Defendants argue the TRC left open the possibility that Plaintiff's witnesses could write letters on his behalf, thereby satisfying due process because Plaintiff does not have the "absolute right to call live witnesses." (*Id.* at 9.) Indeed, *Anderson* holds that inmates have only "some opportunity" to call witnesses in revocation hearings, and that written argument may be

sufficient.  446 F.3d at 329.  And Plaintiff acknowledges that due process is "flexible enough to consider evidence including letters," (P's Opp. at 13 (quoting *Morrissey*, 408 U.S. at 489)), and cites to no cases indicating that "some opportunity" requires live testimony.

Plaintiff contends that the opportunity to present letters was foreclosed to him when the hearing ended and Defendant Campbell told Plaintiff that the TRC would recommend revocation to the Superintendent.  (*Id.* at 13-14 (citing AC ¶¶ 103-104).)  But Plaintiff does not allege that he asked the TRC about the process for submitting letters, that he asked the TRC to hold the record open to receive letters, that he collected letters in an attempt to submit them, that he forwarded letters to the Superintendent, that he offered letters as part of his appeal, or that he otherwise attempted to exercise the opportunity afforded to him.  He also does not allege that the TRC prevented him from submitting letters.  Nor does he even allege that Jiminez and Brerenton would in fact have advocated that Plaintiff remain in the Program.[4]  Finally, he does not plausibly allege that information from those individuals would have caused a reasonable decisionmaker to excuse his misconduct and allow him to remain in the Program.  Accordingly, Plaintiff cannot show that he was deprived of due process because he was prevented from submitting letters or because he was given the opportunity to submit letters rather than call live witnesses, and his first and second claims must be dismissed.

---

[4] That Jiminez and Brerenton had positive experiences with Plaintiff before he absconded by no means suggests that they would thereafter have recommended that he continue to have the privilege of work release.  Plaintiff's bare allegations that Jiminez and Brerenton – whose trust he had betrayed – would have been in favor of his continued participation, (AC ¶¶ 74-75, 79-80), do not, without factual backing, cross the line from conceivable to plausible.  *See Twombly*, 550 U.S. at 570.

### 2.   TRC Defendants

Next, Plaintiff alleges that the TRC Defendants were biased, thereby violating his right to impartial hearing officers.  (AC ¶ 181.)  To show bias, he argues that the "some evidence" standard does not apply to revocation hearings.  (P's Opp. at 16.)  But Second Circuit precedent clearly holds that it does.  *See Friedl*, 210 F.3d at 85.  Plaintiff contends that that standard undercuts the Supreme Court's guarantee, articulated in *Morrissey*, that a "parolee must have an opportunity to be heard and to show, if he can, . . . that circumstances in mitigation suggest that the violation does not warrant revocation," 408 U.S. at 488, and that therefore the TRC's decision was arbitrary and biased.  But even if pre-deprivation hearings come with all of *Morrissey*'s protections – and it is not clear that they do, because they must include "protections" that are only "*similar* to those set forth in *Morrissey*," *see Anderson*, 446 F.3d at 329 (emphasis added) – it is clear from the AC that the TRC both relied on "some evidence" in making its determination and gave Plaintiff the opportunity to be heard.  First, Plaintiff admitted to absconding, (AC ¶ 62), which he does not dispute is a rule violation.  That admission is plainly "some evidence."  Second, he was told he could have witnesses write letters on his behalf, which, as discussed, is an opportunity to be heard, regardless of whether he pursued that opportunity.  Third, what Plaintiff really seems to challenge is Defendant Campbell's position that even positive recommendations from witnesses would not have changed her view that Plaintiff's violation had rendered him unfit for the Program.  While under *Morrissey* he was entitled to attempt to show that he was a good candidate for work release even after absconding, he was not entitled to a reviewer who agreed.  Campbell's position that Plaintiff's violation of trust disqualified him from further liberty is hardly so unreasonable as to suggest bias on her part.  Accordingly, Plaintiff's allegations that the TRC Defendants were biased or that the

hearing's outcome was arbitrary are not plausible.  Plaintiff's third claim, against Blacke, Campbell, and Glover, therefore must be dismissed.

### 3.    Defendants Ledbetter, Fields, and Vick

Plaintiff's fourth claim alleges that Defendants Ledbetter, Fields, and Vick violated his due process rights by "[taking] no corrective action to provide Plaintiff with a new hearing" after "learning and becoming aware of Plaintiff's constitutional rights being violated by [the TRC Defendants]."  (AC ¶¶ 183.)  But Plaintiff does not allege that Ledbetter, Fields, or Vick took any action other than agreeing with or affirming the TRC.  Because the TRC did not violate Plaintiff's due process rights, it cannot be, absent additional allegations as to Ledbetter, Field, and Vick's conduct, that approving or affirming its recommendation violates his rights.  Accordingly, Plaintiff's fourth claim is dismissed.

### B.    <u>Substantive Due Process</u>

Plaintiff also asserts, as his ninth cause of action, that the named Defendants violated his Fourteenth Amendment substantive due process rights by "revok[ing] Plaintiff's temporary release status and depriv[ing] Plaintiff of his liberty interest" in a manner that was "deliberate[ly] indifferen[t], . . . arbitrary, impermissible, malicious, in abuse of their powers and authority, [and] not reasonably related to any legitimate penological interests."  (AC ¶ 195.)  "[T]o state a claim for substantive due process a plaintiff must allege that:  (1) he had a valid liberty interest and (2) defendants infringed on that right in an arbitrary or irrational manner."  *Adams v. Annucci*, No. 17-CV-3794, 2018 WL 4608216, at *6 (S.D.N.Y. Sept. 25, 2018) (internal quotation marks and alterations omitted).  "Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not

against government action that is incorrect or ill advised." *Cunney v. Bd. of Trs.*, 660 F.3d 612, 626 (2d Cir. 2011) (internal quotation marks omitted).

Plaintiff argues that the TRC recommended revocation "without having heard Plaintiff's argument against revocation," and that therefore the revocation occurred "without regard to facts, circumstances, fixed rules, or procedures." (P's Opp. at 19 (internal quotation marks omitted)). But as discussed above, the TRC based its decision on "some evidence," including that Plaintiff admitted to violating Program rules. Accordingly, his removal was not arbitrary. Further, Plaintiff, a sentenced prisoner, was given the privilege of temporary release under a DOCCS program, violated the rules governing that liberty, and admitted to violating those rules. That he then served the rest of his sentence in prison does not even seem surprising, let alone conscience-shocking or oppressive. Ensuring that a prisoner who had previously absconded no longer has the opportunity to repeat that conduct is clearly related to a legitimate penological interest. Accordingly, Plaintiff has failed to state a claim for violation of his substantive due process rights, and his ninth cause of action must be dismissed.

**C.**    **Conspiracy**

As his seventh cause of action, Plaintiff alleges that Defendants "agreed to act in concert" to violate his constitutional rights under 42 U.S.C. § 1983. (AC ¶ 190.)[5] To support a § 1983

---

[5] Defendants argue that Plaintiff fails to state a § 1983 conspiracy claim, (Ds' Mem. at 13-14), and Plaintiff does not oppose that argument. I therefore could consider this claim abandoned. *Martinez v. City of N.Y.*, No. 11-CV-7461, 2012 WL 6062551, at *1 (S.D.N.Y. Dec. 6, 2012) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (internal quotation marks omitted). Because Plaintiff is *pro se*, however, I will overlook his failure to oppose and I will address the conspiracy claim. *See Peterec v. Hilliard*, No. 12-CV-3944, 2013 WL 5178328, at *6 n.12 (S.D.N.Y. Sept. 16, 2013).

conspiracy claim, a plaintiff must plausibly allege "(1) an agreement between two or more state actors or a state actor and a private party, (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Bussey v. Phillips*, 419 F. Supp. 2d 569, 586 (S.D.N.Y. 2006). "A plaintiff must allege facts that plausibly suggest a meeting of the minds and provide some details of time and place." *Bertuglia v. City of N.Y.*, 839 F. Supp. 2d 703, 728 (S.D.N.Y. 2012) (internal quotation marks omitted), *appeal dismissed*, 509 F. App'x 43 (2d Cir. 2013) (summary order).

Plaintiff does not allege any facts that plausibly support that any of the Defendants had a meeting of the minds with the goal of depriving Plaintiff of his rights. The conclusory allegation that Defendants "agreed to act in concert," (AC ¶ 190), is "insufficient to state a claim where it is not supported by additional factual allegations describing the alleged conspiracy," *Bertuglia*, 839 F. Supp. 2d at 728. "The facts in his pleading . . . show that to the extent the Defendants were acting in concert, it was to [review Plaintiff's participation in the Temporary Release Program], not to inflict an unconstitutional injury." *Kwok Sze v. Pui-Ling Pang*, No. 15-CV-447, 2015 WL 6867134, at *5 (S.D.N.Y. Nov. 9, 2015). Moreover, a § 1983 conspiracy claim fails as a matter of law without an underlying § 1983 violation, *see Mitchell v. County of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. 2011), and the underlying § 1983 claims here have been dismissed. Finally, any factual allegations that Defendants conspired together are legally insufficient, because the intracorporate immunity doctrine generally bars conspiracy claims against employees of the same entity. *See Richard v. Fischer*, 38 F. Supp. 3d 340, 353 (W.D.N.Y. 2014) ("The intracorporate conspiracy doctrine bars conspiracy claims against employees of entities such as DOCCS (when those employees are alleged to have conspired solely with each other) unless, pursuant to the doctrine's scope of employment exception, the employees were pursuing

13

personal interests wholly separate and apart from the entity by whom they were employed.")
(internal quotation marks and alteration omitted).  And there is no suggestion here that any
exception to the doctrine applies.  For all these reasons, Plaintiff's § 1983 conspiracy claim is
dismissed.

### D.   **Supervisory Liability**

As his sixth cause of action, Plaintiff alleges that Defendants Ledbetter, John Doe, Jane
Doe, and Fields failed "to adequately train, supervise, monitor and manage" Campbell, Blacke,
Glover, and Vick.  (AC ¶ 188.)  He fails to argue this issue in his opposition, but granting him
"special solicitude," *see Shibeshi*, 475 F. App'x at 808, I construe him to be alleging supervisory
liability based on failure to train or failure to supervise.  "Supervisory liability is not a claim in
itself, but rather a theory under which a supervisor can be liable under § 1983 for the
constitutional violations of her subordinates."  *Phillips v. City of Middletown*, No. 17-CV-5307,
2018 WL 4572971, at *7 (S.D.N.Y. Sept. 24, 2018).  Plaintiff alleges that John and Jane Doe
were employed at DOCCS and "responsible for supervising and training DOCCS officials
appointed to conduct the Temporary Release revocation hearings process," (AC ¶¶ 31, 36; *id.*
¶¶ 30, 35), that Ledbetter was "responsible for monitoring, inspecting, supervising, controlling,
managing and reviewing the activities and revocation hearing decisions of defendants," (*id.*
¶ 116), that Ledbetter, the Does, and Fields "were aware" that the TRC Defendants and Vick
lacked certain qualifications to be employed by DOCCS, (*id.* ¶ 162), and that they failed to
adequately train and supervise the TRC Defendants and Vick, (*id.* ¶¶ 163-168).

As with all § 1983 claims, Plaintiff must establish Defendants' personal involvement in
the alleged constitutional violation.  *See Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) ("It is
well settled in this Circuit that personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted). Under *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), the personal involvement of a supervisor may be shown in one of five ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

58 F.3d at 873. "Although the Second Circuit has yet to speak definitively, there is a strong argument that after *Iqbal*, 556 U.S. at 677, supervisory liability may be predicated only on direct involvement in the constitutional violation or creation of a policy that sanctioned it." *Phillips*, 2018 WL 4572971, at *8 n.7 (collecting cases).

Even assuming a plaintiff can still state a claim for supervisory liability under *Colon* post-*Iqbal*, Plaintiff has not plausibly alleged supervisory liability here. First, there is no underlying constitutional violation, so Plaintiff has not stated a claim for which the supervisory Defendants could be liable. *See Raspardo v. Carlone*, 770 F.3d 97, 129 (2d Cir. 2014) (where "there was no underlying constitutional violation, there is also no supervisory liability"). Second, Plaintiff has not pleaded facts plausibly suggesting any of the *Colon* forms of liability. To the extent he intended to plead the second type of liability, he has failed, because his generic reference to "previous appeals, reports, lawsuits, complaints and grievances," (AC ¶ 158), is devoid of facts, and "[a]mple Second Circuit case law makes clear that a Plaintiff does not state a claim where he alleges only that a supervisory official received reports of wrongdoing," *Baptiste v. Griffin*, No. 18-CV-7274, 2019 WL 5635808, at *4 (S.D.N.Y. Oct. 31, 2019) (internal quotation marks omitted). As to the fourth and fifth types of liability, Plaintiff asserts essentially

no facts, relying instead on boilerplate that is "too conclusory to pass muster."  *Samuels v. Fischer*, 168 F. Supp. 3d 625, 639 (S.D.N.Y. 2012); *see Baptiste*, 2019 WL 5635808, at *4 ("[M]ere failure to act on a complaint, without more, fails to state a claim against a Section 1983 defendant."); *Jackson v. Williams*, No. 16-CV-1137, 2017 WL 1162196, at *4 (N.D.N.Y. Mar. 28, 2017) (supervisory liability premised on grossly negligent training "cannot rest on mere boilerplate allegations") (collecting cases); *Gray-Davis v. New York*, No. 14-CV-1490, 2015 WL 2120518, at *8 (N.D.N.Y. May 5, 2015) ("Vague and conclusory claims that a supervisory official has failed to provide proper training and supervision or created a specific policy, without facts showing personal involvement, are legally insufficient to state a claim . . . .").  And he presents no facts plausibly suggesting that the supervisory Defendants had any role in the training or supervision of the other Defendants.  Accordingly, Plaintiff's supervisory liability claim must be dismissed.

The closest Plaintiff comes to alleging personal participation relates to Defendant Ledbetter.[6]  Plaintiff makes the following allegations:  he sent his appeal from the TRC's determination and Defendant Field's decision to Ledbetter, (AC ¶115); she read the appeal and listened to the hearing recording, thereby becoming aware of her subordinates' alleged violation of Plaintiffs' rights, (*id.* ¶¶ 123-126); he sent her a letter requesting an update, which she received and read, thereby becoming aware of the continuing violation of his rights, (*id.* ¶¶ 128-129); and she approved Defendant Vick's decision, (*id.* ¶¶ 148-149).  But Plaintiff offers no basis for his knowledge or belief that Defendant Ledbetter read his appeal, listened to the hearing recording, read his letter, approved Defendant Vick's decision, or otherwise became aware of the

---

[6] Defendant alleges Fields's personal participation, but as a decision maker, not a supervisor of the other Defendants.  Fields's lack of liability for his role in removing Plaintiff from the Program has been earlier discussed.

other Defendants' conduct.  These allegations therefore rest on bald and speculative assertions about Plaintiff's "belief" of Ledbetter's conduct, which the Court is not required to accept.  *See Iqbal*, 556 U.S. at 678.  Plaintiff has not "nudged [his] claims" of Defendant Ledbetter's personal involvement "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

The allegations not based upon pure speculation are also not sufficient to show Defendant Ledbetter's personal involvement.  Plaintiff alleges that he sent his appeal and a letter to her. (AC ¶¶ 115, 128.)  "[W]riting to a supervisory official is insufficient to establish . . . personal involvement."  *Simpson v. Rodas*, No. 10-CV-6670, 2012 WL 4354832, at *8 (S.D.N.Y. Sept. 21, 2012); *see Shomo v. City of N.Y.*, 579 F.3d 176, 184 (2d Cir. 2009) (dismissing § 1983 claims against DOCCS officials for lack of personal involvement when "[t]he only allegation pertaining to [those] defendants [wa]s that [the plaintiff] filed complaints with [them]"); *see also Gonzalez v. Sarreck*, No. 08-CV-3661, 2011 WL 5051341, at *15 (S.D.N.Y. Oct. 24, 2011) ("Both the Court of Appeals and numerous district courts in this Circuit have held that receipt of letters or grievances is insufficient to impute personal involvement."); *Rivera v. Pataki*, No. 04-CV-1286, 2005 WL 407710, at *22 (S.D.N.Y. Feb. 7, 2005) ("Simply because [the plaintiff] wrote to these supervisory officials complaining of mistreatment does not justify holding them liable under § 1983."); *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[T]o allow a mere letter to an official to impose supervisory liability would permit an inmate to place liability on individuals who had no authority over the situation complained of merely by sending letters.").[7]

---

[7] Even if Ledbetter in fact reviewed and then ignored Plaintiff's letter and appeal, there would still be no liability under § 1983.  "The general rule is that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violation."  *Honig v. Bloomberg*, No. 08-CV-541, 2008 WL 8181103, at *5 (S.D.N.Y. Dec. 8, 2008) (internal quotation marks omitted), *aff'd*, 334 F. App'x 452 (2d Cir. 2009); *see, e.g.*, *id.* ("[C]ourts have repeatedly found that the

Plaintiff argues that Ledbetter must nevertheless be held liable because she is "the supervisory official responsible for reviewing and making final decisions on revocation hearing appeals" and is in charge of supervising her staff.  (P's Opp. at 5.)  But "[s]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*."  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (internal quotation marks omitted).  And, as discussed, Plaintiff has not plausibly alleged that Ledbetter knew or had reason to know of the allegations of misconduct or was otherwise involved.  To the contrary, it is clear that Vick made the decision to turn down Plaintiff's appeal.  The claims against Ledbetter must therefore be dismissed.

## E.   Failure to Intervene

Plaintiff's fifth cause of action asserts that the named Defendants failed to prevent one another from violating his constitutional rights under 42 U.S.C. § 1983.  (AC ¶ 185.)  "'It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.'"  *J.H. v. City of Mount Vernon*, No. 18-CV-4399, 2019 WL 1639944, at *5 (S.D.N.Y. Apr. 15, 2019) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).  "Liability may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene."  *McClean v. County of Westchester*, No. 17-CV-4492, 2018 WL 6329420, at *19

---

allegation that a supervisory official ignored a . . . letter protesting unconstitutional conduct is not itself sufficient to allege the personal involvement of the official so as to create liability under § 1983.") (second alteration in original) (internal quotation marks omitted); *Rivera v. Goord*, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000) (allegations that inmate wrote to prison officials and was ignored insufficient to hold those officials liable under § 1983).

(S.D.N.Y. Dec. 3, 2018) (internal quotation marks omitted), *aff'd sub nom. McClean v. City of Mount Vernon*, 776 F. App'x 725 (2d Cir. 2019) (summary order).  "A failure to intervene under § 1983 cannot prevail when there is no underlying constitutional violation."  *Nelson v. City of N.Y.*, No. 18-CV-4636, 2019 WL 3779420, at *7 (S.D.N.Y. Aug. 9, 2019).

Plaintiff argues that, as long as his underlying claims survive, so too must his failure to intervene claim.  (P's Opp. at 20.)  Because his underlying claims are dismissed, his failure to intervene claim must be dismissed as well.  *See Jackson v. Prack*, No. 16-CV-7561, 2019 WL 6119010, at *10 n.10 (S.D.N.Y. Nov. 18, 2019).

### F.      Intentional and Negligent Infliction of Emotional Distress

Plaintiff's eighth cause of action asserts claims of intentional and negligent infliction of emotional distress.  (AC ¶¶ 191-193.)  Plaintiff argues that these claims arise under federal law and that "there is absolutely no cause of action asserting a specific violation of New York State Law, nor any facts that could be interpreted to support such a claim."  (P's Opp. at 21.)  But there is no federal constitutional right to be free from the infliction of emotional distress.  *Rojas v. Alexander's Dep't Store*, 654 F. Supp. 856, 859 (E.D.N.Y. 1986).  In an excess of caution, and despite Plaintiff's disclaimer, I treat these claims as arising under state law.  The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having determined that the only claims over which this Court has original jurisdiction should be dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law causes of action.  *See id.* (citing 28 U.S.C. § 1367(c)(3)).  The claims for intentional and negligent infliction of emotional distress

are therefore dismissed with prejudice to the extent brought under federal law and without prejudice to the extent brought under state law.[8]

### G.   Eleventh Amendment

Defendants argue, and Plaintiff concedes, that the Eleventh Amendment bars Plaintiff's claims against Defendants in their official capacities.  (*See* Ds' Mem. at 16; P's Opp. at 21.) Thus, Plaintiff's claims against Defendants in their official capacities are dismissed.

### H.   Qualified Immunity

Even if the named Defendants did violate Plaintiff's due process rights, they would be entitled to qualified immunity.  "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (*per curiam*) (internal

---

[8] In any event, it appears Defendants are correct that Plaintiff's intentional and negligent infliction of emotional distress claims would be dismissed pursuant to New York Corrections Law section 24, which provides corrections officials with immunity from liability based on acts or omissions within the course of their employment.  *See Parris v. N.Y. State Dep't of Corr. Servs.*, 947 F. Supp. 2d 354, 365 (S.D.N.Y. 2013).  Plaintiff has failed to assert any allegations that Defendants acted other than in the course of their official duties as DOCCS officers, and accordingly, he has not plausibly suggested any reason why they would not be covered by section 24, *see Armstrong v. Jin*, No. 18-CV-1380, 2020 WL 1172168, at *2 (W.D.N.Y. Jan. 30, 2020), *report and recommendation adopted*, 2020 WL 1171287 (W.D.N.Y. Mar. 10, 2020).  If Plaintiff's supervisory liability allegations were construed as state law claims for negligent hiring/training/supervision, I would likewise decline to exercise supplemental jurisdiction and Defendant would likewise be shielded under section 24.  Further, Plaintiff does not plausibly allege the elements of either negligent or intentional infliction of emotional distress.  *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297-98 (S.D.N.Y. 2015) (listing elements of both claims).  No conduct alleged in the Amended Complaint approaches the kind of "outrageous" or "extreme" conduct required.  A sentenced prisoner serving his sentence after violating the rules of a temporary release program clearly does not "go beyond all possible bounds of decency."  *Id.* at 298 (internal quotation marks omitted).  And Plaintiff's allegations of severe injury are pure boilerplate.  (*See* AC ¶ 172 ("As a direct and proximate cause of defendants['] . . . actions, and/or failure to act, Plaintiff experienced personal injuries, pain and suffering, fear, psychological anxiety, depression, emotional distress, loss of liberty, mental anguish, humiliation, embarrassment and financial loss.").)

quotation marks omitted), or insofar as it was objectively reasonable for them to believe that

their conduct did not violate such rights, *see Anderson v. Creighton*, 483 U.S. 635, 638-39

(1987).  A government official sued in his individual capacity is entitled to qualified immunity

> (1) if the conduct attributed to him was not prohibited by federal law; or (2) where
> that conduct was so prohibited, if the plaintiff's right not to be subjected to such
> conduct by the defendant was not clearly established at the time it occurred; or (3)
> if the defendant's action was objectively legally reasonable in light of the legal rules
> that were clearly established at the time it was taken.

*Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 210 (2d Cir. 2002) (internal quotation marks,

citations, and alterations omitted); *see Creighton*, 483 U.S. at 639 ("[W]hether an official

protected by qualified immunity may be held personally liable for an allegedly unlawful official

action generally turns on the objective legal reasonableness of the action assessed in light of the

legal rules that were clearly established at the time it was taken.") (internal quotation marks and

citation omitted).  "Qualified immunity 'protects all but the plainly incompetent or those who

knowingly violate the law.'"  *Jackson*, 2019 WL 6119010, at *9 (quoting *Ashcroft v. al-Kidd*,

563 U.S. 731, 743 (2011)).

As to the TRC Defendants, while an inmate's limited right to call witnesses or present

documents is clearly established, there is no clearly established law that an inmate is entitled to

live testimony from character witnesses in a Temporary Release Hearing.  And it is objectively

reasonable to rely on that inmate's admission to a violation of the rules governing the Program.

Nor can it be said to be objectively unreasonable to conclude that witnesses to Plaintiff's good

behavior before he absconded would not have had anything significant to contribute to the

decision as to whether an admitted absconder should continue to be allowed the privilege of

temporary release.  And finally, there is no clearly established law that would suggest that the

facts before the TRC would not meet the "some evidence" standard.  Thus, the TRC Defendants

are entitled to qualified immunity.

As to Defendants Fields and Vick, taking the plausible, non-conclusory allegations in the Amended Complaint as true, they knew only that they were approving or affirming the TRC's decision despite the fact that Plaintiff was not allowed to call live character witnesses.  Because, as described above, there is no clearly established law that Plaintiff was entitled to do so, there is no basis to conclude that they knew or reasonably should have known that that Plaintiff's due process rights were violated, and they are entitled to qualified immunity.  *See Colon v. Annucci*, 344 F. Supp. 3d 612, 631-32 (S.D.N.Y. 2018) (collecting cases).[9]

## IV.   LEAVE TO AMEND

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . .'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has amended once, after having the benefit of a pre-motion letter from Defendants, (Doc. 26), as well as the Court's observations during a pre-motion conference, (Minute Entry dated Aug. 20, 2019).  "In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend."  *Jackson*, 2019 WL 6119010, at *11 (citing *Nat'l Credit Union Admin. Bd. v. U.S.*

---

[9] The same would be true of Ledbetter if there were facts suggesting her personal involvement.

22

*Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (alteration, footnote, and internal quotation marks omitted)).

Here, Plaintiff has asked to amend again, (P's Opp. at 24), but he has not suggested that he is in possession of facts that would cure the deficiencies identified in this Opinion. Accordingly, the Court declines to grant leave to amend.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result), *reh'g denied*, 645 F.3d 519 (2d Cir. 2011); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

## V.     <u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of the Court is respectfully directed to terminate the pending motion, (Doc. 38), enter judgment for Defendants, and close the case.

**SO ORDERED.**

Dated: May 22, 2020
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.